## NELSON CLARK & others *vs.* EVANGELICAL SOCIETY IN QUINCY & others.

Land was conveyed to two persons in trust for an unorganized religious society, and upon the organization of the society was conveyed to them, upon condition that they should hold, occupy and improve the same for religious worship, and support a minister there. *Held,* that the minister, and a minority of the society, not being pewholders, nor having paid any purchase money, could not maintain a bill in equity to restrain the society from reconveying the estate to the trustees, discharged of any trust; nor to compel them to permit the minister to preach in the house.

BILL IN EQUITY, averring that before 1841 a large sum of money was collected from individuals and by contributions in churches for the purpose of purchasing land and building a meeting-house thereon for the use of an Evangelical Congregational church, formed and existing in Quincy, and of the congregation connected therewith ; and was invested accordingly and the land conveyed to Jonathan Newcomb and Charles Hardwick, who held it in trust for said church and congregation ; that in 1841 the congregation was duly organized into a parish,

and as such became connected with the church, and Newcomb and Hardwick conveyed the meeting-house to the parish, " upon the express condition following, that is to say, that the said Evangelical Congregational society shall hold, occupy and improve the said premises for the public worship of God, and for that purpose shall maintain and support a Trinitarian Congregational teacher of religion, such as in the first place shall be selected by three quarters of the male members of the church worshipping with said society, and afterwards approved by said society, and regularly ordained ; " that the parish thereupon became and had ever since continued to be seised and possessed of the premises, but upon the trust that they should hold, occupy and improve the house for the public worship of God, as in the deed set forth, and thereby a trust in accordance with the design of the original donors and contributors was created for the benefit of the several members of the parish, and the church and congregation worshipping therewith ; and the plaintiffs, as members of such society, church or congregation, and their families, had the right to have the house so held, occupied and improved ; and the society, recognizing such trusts, had, until the occurrences complained of, so held, occupied and improved it.

The bill then alleged that the plaintiff Clark in 1850 was selected, approved and ordained as pastor and minister of the church and society, according to the terms of the deed and the usages of Trinitarian Congregational churches and societies, and with the rights and privileges of such pastor and minister, and continued so to be, and was a Trinitarian Congregational teacher of religion in good and regular standing; that the four other plaintiffs were members of the society and church, and entitled to all the rights and subject to all the liabilities of such ; that Clark, until the occurrences complained of, faithfully performed, and was now entitled to perform, the duties of pastor and minister, and the other plaintiffs with other members of the society were entitled to the benefit of such ministrations, in execution of the charitable intentions of the donors and of the trust on which the society held the house.

The bill further alleged that the society or parish, by a small majority of votes, contriving illegally to deprive Clark of his office of minister, and to prevent his exercising its duties in the house, and to deprive the plaintiffs of the benefit thereof, and to avoid and defeat the trust created by the deed, had combined and confederated with Newcomb and Hardwick, and with the standing committee of the parish, so to deprive the plaintiffs of their respective rights and privileges under the trust, and to work a forfeiture of the house, or to convey and surrender it to New-comb and Hardwick, discharged of the trusts, whereby the society, their members and the church would be deprived of all interest in or benefit of the house, and the intention of the donors and contributors to this charity would be defeated, and the charity itself and the trust connected therewith destroyed.

The bill further alleged that in execution of these designs the society, at the instigation of the standing committee, in March 1857 voted to receive no new members, thus excluding many members of the congregation, contrary to the purposes for which the house was built and the society formed, and with design to give the confederating parties the control of the society; and without right voted to dismiss Clark from his pastoral relations with the society, to dissolve that relation, and to close the house during the pleasure of the standing committee; and that committee closed and fastened up the house, and refused to allow it to be opened for worship, or Clark to preach there, and had continued so to do to the present time; that the church had never dismissed him; that no ecclesiastical council had been called; that he had been settled as pastor and minister for life, and had done nothing to forfeit his relation, and had been and was ready to perform his duties, and still was minister of the society, and as such and by the terms of the trust had a right to occupy the pulpit of the house and to preach therein.

The bill then alleged that in further execution of the confederacy Newcomb and Hardwick had claimed the house, pretending that it had been forfeited by reason of being closed by the society, and had entered for breach of condition in their deed, intending with the concurrence of the standing committee to

get the house into their possession and control, and afterwards dispose of it as they should choose; that the parish, at a meeting called to act on such claim, on the 23d of June 1857, voted to convey the house to Newcomb and Hardwick upon payment of $500, and were about to make such conveyance, with design to deprive the plaintiffs of their rights, and in collusion with Newcomb and Hardwick illegally to sever the ministerial relation of Clark with the society, and to oust him of his position as minister; that such conveyance by the parish and receipt thereof by Newcomb and Hardwick were contrary to the trust reposed in them by the donors of the funds, a breach of trust, and injurious to the plaintiffs, and that if the society should convey, the house might be forfeited and the plaintiffs be without redress.

The bill prayed for a discovery by the society through their standing committee, and by Newcomb and Hardwick; that the latter might be restrained from taking possession, and the society from conveying or surrendering possession of the house; that the society might be required to open it, and allow Clark to preach there, and the house to be used according to the trust; and for other relief, and due process.

The defendants filed a general demurrer.

*E. Ames,* for the defendants,

*C. T. Russell,* for the plaintiffs.

THOMAS, J. 1. This bill cannot be maintained for the execution or enforcement of a trust. There clearly is no express trust. The land on which the church stands was originally conveyed to Newcomb and Hardwick in trust for the defendant society before its organization. But upon the organization of the parish the estate was conveyed to them, and the legal and equitable title were united. No trust appears in the deed under which the society hold the estate.

There was no resulting trust. The bill does not aver that any part of the purchase money was paid by the plaintiffs or any one of them.

2. Nor can the bill be maintained on the ground of fraud. The plaintiffs show no ground for their intervention to prevent

any breach of the condition of the deed or forfeiture of the estate. They are not averred to be pewholders whose estates might be lost by the combined action of the society and the grantors in the deed. The society is the owner of the meeting-house, and by its action must determine whether and when and how it shall be used. The plaintiffs, as part of the parish, are bound by the action of the corporation. If Mr. Clark has a permanent settlement, and has been ready and willing to discharge his duties as the bill avers, he has a clear and adequate remedy at law. This court, sitting in equity, cannot compel him to preach, or his society to open the church for him and his friends. *Demurrer sustained and bill dismissed.*